FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 13, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TONY J. LUZZO,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation,<br><br>　　　　　　Defendant. | NO: 1:19-CV-3049-RMP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

BEFORE THE COURT is a Motion for Partial Summary Judgment re: Plaintiffs' Alleged Claims and Damages, ECF No. 30, by Defendant State Farm Automobile Insurance Company ("State Farm"). Having reviewed the parties' filings, the remaining docket, the relevant law, and having heard oral argument, the Court is fully informed.

## BACKGROUND

The following facts are undisputed, unless otherwise noted. Plaintiff Tony Luzzo was in a three-vehicle collision on October 19, 2017 ("the car accident").

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 1

ECF Nos. 1 at 2; 30-2 at 2. An underinsured driver rear-ended Mr. Luzzo's vehicle, and the at-fault driver's insurers paid Mr. Luzzo the $50,000 coverage limit. ECF No. 1 at 2. Mr. Luzzo alleges that he suffered physical injuries, physical disability and pain, emotional trauma, medical expenses, and other damages as a result of the collision, and that he was not made whole by the $50,000 that he received. *Id.* at 3. However, State Farm denied Mr. Luzzo's request for payment of underinsured motorist coverage ("UIM") benefits for his injuries. *See id.* at 3.

Mr. Luzzo had incurred a work-related injury prior to his car accident, but testified that he had recovered from his workplace to a point of feeling "as good as it was going to get" before October 2017. ECF No. 34-1 at 2. Mr. Luzzo alleges that, as a result of the car accident, he sustained a disc collapse in his cervical spine with resulting bilateral spinal stenosis with neck pain and bilateral, radicular arm/hand pain. ECF No. 30-1 at 9. Mr. Luzzo also testified that the nerve-type pain that he experienced after his car accident was more intense than the pain that he experienced after his prior injury. ECF No. 34-1 at 4.

Mr. Luzzo underwent a cervical spine discectomy and fusion, performed by Carlo Bellabarba, MD on November 28, 2018. ECF Nos. 30-1 at 22; 33 at 1. Mr. Luzzo alleges that the injury to his cervical spine that he incurred in the car accident "ultimately resulted" in the surgery. ECF No. 30-1 at 22.

Neurosurgeon Eduardo Meirelles, MD evaluated and treated Mr. Luzzo both before and after his car accident. ECF No. 35-2 at 2. In the expert report written by

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 2

Dr. Meirelles and dated January 21, 2020, Dr. Meirelles recounted in detail what he observed in his review of dynamic x-rays and magnetic resonance imaging ("MRI") scans that Mr. Luzzo underwent in 2014, after the workplace accident, and in 2017, after the car accident. ECF No. 35-2 at 2−5. Dr. Meirelles concluded that some of the "significant structural changes" in Mr. Luzzo's cervical spine "may have even predated the initial accident in 2014 in which he had a work-related injury." *Id*. at 6. Dr. Meirelles also found it "less likely" that Mr. Luzzo was experiencing no neck pain just before he was injured in the car accident, but acknowledged Mr. Luzzo's report that his symptoms had abated by that point. *Id.* Dr. Meirelles further concluded that the increased instability of Mr. Luzzo's cervical spine apparent in imaging following the car accident was consistent with a collision involving whiplash. *Id.* Dr. Meirelles continued:

> In other words, it is consistent with the history of worse neck pain, the possibility that the structural changes in the cervical spine, which were present prior to the motor vehicle accident, were somewhat worsened after the motor vehicle accident and lit up some of the symptoms of neck pain and arm pain, paresthesias, and numbness. On the other hand, it also has to be kept in mind that over three years, structural changes that were quite significant in 2014 may have worsened slightly and contributed to some of the changes seen in 2017.

*Id.* Dr. Meirelles opined that the cervical spine surgery was the "correct decision" but stopped short of opining that the surgery resulted from the car accident. *Id.*

In response to the instant summary judgment motion, Plaintiff submitted an additional "Sworn Statement" from Dr. Meirelles. Dr. Meirelles opined that the pain

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 3

and disability that Mr. Luzzo had before the car accident "was aggravated/exacerbated/made worse/lit up as a direct result" of the car accident. ECF No. 35 at 3.  Dr. Meirelles concluded that as a matter of reasonable medical probability, the imaging studies taken before and after the car accident indicate an "objective increase in . . . instability of Mr. Luzzo's cervical spine" after the car accident.  *Id.*  Dr. Meirelles posited: "I believe that it was the correct decision for Dr. Bellabarba to perform cervical spine surgery on Mr. Luzzo in November, 2018, aside from any consideration of the cause of his cervical conditions."  *Id.* at 4. Meirelles further opined: "The injuries caused to Mr. Luzzo by the [car accident] were probably a direct, precipitating cause of the need/the necessity for Dr. Bellabarba to perform the cervical spine surgery on Mr. Luzzo in November, 2018."  *Id.*

## SUMMARY JUDGMENT STANDARD

Summary judgment serves "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323−24 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a

1 reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment must cite to "particular parts of materials in the record" establishing a genuine dispute or show why the materials cited do not establish either the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or if not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249−50 (internal citations omitted). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." *Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003).

**DISCUSSION**

Plaintiff seeks "judgment against the defendant for UIM coverage benefits for the injuries he has sustained, and will sustain in the future, in an amount no less than the $100,000.00 of UIM coverage that the plaintiff contracted for with defendant." ECF No. 1 at 3, 4.

"UIM insurance provides an excess layer of coverage that is designed to provide full compensation for all amounts that *a claimant is legally entitled to* where the tortfeasor is underinsured." *Petersen-Gonzales v. Garcia*, 120 Wn. App. 624 634 (Wash. Ct. App. 2004) (emphasis in original). "The term 'legally entitled to' is critical as the UIM's liability to the insured is identical to the tortfeasor's liability up to the amount of the UIM policy limits." *Id*. The UIM "insurer is therefore liable to its insured only in the event of damages caused by the negligence of an uninsured motorist." *McIllwain v. State Farm Mut. Auto. Ins. Co.*, 133 Wn. App. 439, 447 (Wash. Ct. App. 2006). Negligence requires a showing of four, well-established elements: (1) a duty; (2) beach of that duty; (3) resulting injury; and (4) proximate cause between the breach and the injury. *See Am. Commerce Ins. Co. v. Ensley*, 153 Wn. App. 31, 42 (Wash. Ct. App. 2009) (citing *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220 (Wash. 1991)).

"A proximate cause is one that in natural and continuous sequence, unbroken by an independent cause, produces the injury complained of and without which the ultimate injury would not have occurred." *Attwood v. Albertson's Food Ctrs., Inc.*, 92 Wn. App. 326, 330 (Wash. Ct. App. 1998). "Whether or not causation must be shown with expert testimony depends on the nature of the injury. Expert testimony is required to establish causation when an injury involves obscure medical factors that would require an ordinary lay person to speculate or conjecture in making a finding." *Bruns v. PACCAR, Inc.*, 77 Wn. App. 201, 890 (Wash. Ct. App. 1995).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 6

1       Under Washington law, a plaintiff must present medical expert testimony to
2  prove causation between an accident and alleged injury. *Miller v. Staton*, 58 Wn.2d
3  879, 886 (Wash. 1961).  The medical expert testimony must go "beyond speculation
4  and conjecture." *Id.*  The causal relationship is not sufficiently established by
5  evidence that the "accident 'might have,' 'may have,' 'could have,' or "possibly did'
6  cause the physical condition." *Id.*  Rather, a plaintiff must offer evidence that the
7  accident was the probable cause of the condition, that the condition more likely than
8  not resulted from the accident." *Id.*

9       In Defendant's initial Motion for Summary Judgment, ECF No. 30, Defendant
10 seeks dismissal as a matter of law of Plaintiff's claims for: damages for past wage
11 loss; damages for future wage loss; damages for impaired earning capacity; past
12 medical treatment and expenses; future medical treatment and expenses;
13 psychological injury or disorder or treatment; related to Plaintiff's anterior cervical
14 discectomy and fusion; and for injuries or damages that have not been disclosed or
15 supported.  ECF No. 30-3.  In Defendant's reply and at oral argument, however,
16 Defendant addressed only damages related to Plaintiff's cervical fusion and
17 unspecified future medical injury.  *See* ECF No. 37.  Defendant contends that
18 Plaintiff cannot show that his cervical fusion surgery was caused by his accident.
19 ECF No. 37 at 1.  Defendant also contends that Plaintiff has not supported any claim
20 for future treatment with medical expert testimony. *Id.* at 4.
21

1    Plaintiff maintains that he has made a prima facie showing of a causal

2 relationship between the car accident and his cervical fusion surgery through the

3 competent expert medical testimony of Dr. Meirelles.  ECF No. 33 at 4.  Plaintiff

4 further argues that determination of noneconomic damages such as pain, suffering,

5 disability, emotional distress, and mental anguish present factual issues that need to

6 be resolved at trial.  *Id.* at 5.

7    As Defendant highlights, in his expert report Dr. Meirelles used equivocal

8 language that does not suffice under *Miller*, 58 Wn.2d at 886, to show a causal

9 relationship between Plaintiff's car accident and his spinal fusion surgery.  *See* ECF

10 No. 35-2 at 6 (noting the "possibility" that structural changes in Plaintiff's cervical

11 spine were "somewhat worsened").  However, Dr. Meirelles's conclusion in his

12 subsequent sworn statement that Plaintiff's injuries from his car accident "probably"

13 resulted in the cervical spine surgery indicates the level of likelihood necessary to

14 survive summary judgment.  Specifically, Dr. Meirelles asserts in his sworn

15 statement that "[t]he injuries caused to Mr. Luzzo by the [car accident] were

16 probably a direct, precipitating cause of the need/the necessity for Dr. Bellabarba to

17 perform the cervical spine surgery on Mr. Luzzo in November, 2018."  ECF No. 35

18 at 3.

19    Defendant cites to Washington Pattern Jury Instruction ("WPI") 30.18 for the

20 proposition that a plaintiff cannot recover for any injuries or disabilities that would

21 have resulted from natural progression of the pre-existing condition even without the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 8

relevant occurrence. *See* ECF No. 37 at 3. However, as that instruction and related instruction 30.17 make clear, a plaintiff with a pre-existing condition may recover damages for aggravation of a pre-existing condition that was either active and causing pain or disability at the time of the relevant occurrence (as addressed by WPI 30.17) or latent (as addressed by WPI 30.18). *See Thogerson v. Heiner*, 66 Wn. App. 466, 472–75 (Wash. Ct. App. 1992) (approving the use of both WPI 30.17 and WPI 30.18 in an action in which there was a dispute whether the plaintiff's pre-existing condition was dormant or active at the time of the accident); *Bowman v. Whitelock*, 43 Wn. App. 353, 358–59 (Wash. Ct. App. 1986); *see also* 6 Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 30.17, 30.18 (7th ed.).

Here, the medical expert evidence submitted by Plaintiff makes a prima facie showing that the accident aggravated Plaintiff's prior injury, or pre-existing condition, and resulted in the need for Plaintiff's spinal surgery on November 28, 2018. *See* ECF Nos. 35-2 and 37 (Dr. Meirelles's report and sworn statement); *see also* ECF No. 34-1 at 4 (Plaintiff's deposition testimony that the nerve-type pain that he experienced after his car accident was more intense than the pain that he experienced after his prior injury). The question of whether the surgery would have been the natural progression of his pre-existing condition, even without the car accident, is a material question of fact unsuitable for summary judgment.

As to Defendant's request for judgment on the matter of future injuries, the Court agrees that the summary judgment record is devoid of evidence supporting

any damages based on future treatment. Plaintiff has not cited for the Court any materials establishing a genuine dispute as to whether the need for future treatment was proximately caused by the car accident. *See* Fed. R. Civ. P. 56(c)(1). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party" *Anderson*, 477 U.S. at 249–50 (internal citation omitted). Therefore, judgment shall be entered for Defendant with respect to costs for treatment not yet received by Plaintiff but to be received in the future.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Partial Summary Judgment, **ECF No. 30**, is **GRANTED IN PART** and **DENIED IN PART**.

2. Judgment shall be entered for Defendant on any claim by Plaintiff for damages based on Plaintiff's future treatment.

3. Summary judgment shall not be entered for Defendant on any other damages claim.

4. As the parties have not briefed the Court on the propriety of certifying this partial summary judgment as final under Fed. R. Civ. P. 54(b), the Court declines to certify finality at this time, with leave to renew the issue by motion.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, enter Judgment as directed, and provide copies to counsel.

**DATED** November 13, 2020.         *s/ Rosanna Malouf Peterson*
                                                                ROSANNA MALOUF PETERSON
                                                                United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 10